# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | |
|---|---|
| ANGELA AGGANIS, ) | |
| ) | |
| PLAINTIFF ) | |
| ) | |
| v. ) | CIVIL NO. 1:15-CV-417-DBH |
| ) | |
| T-MOBILE USA INC., ) | |
| ) | |
| DEFENDANT ) | |

## DECISION AND ORDER ON CROSS-MOTIONS
## FOR SUMMARY JUDGMENT

In this employment sex discrimination case, a former employee has moved for summary judgment on her employer's affirmative defense that she failed to mitigate her damages, and the employer has moved for summary judgment on her claims of hostile work environment and constructive discharge.[1] After oral argument on March 7, 2018, I **GRANT** the plaintiff's motion, and I **GRANT IN PART AND DENY IN PART** the defendant's motion. I conclude that that there is no mitigation defense remaining in the case, that the plaintiff's constructive discharge claim fails as a matter of law, and that there are jury issues raised by the hostile work environment claim and the defendant's affirmative defense to that claim under Faragher v. City of Boca Raton, 524 U.S. 775 (1998), and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998).

---

[1] The plaintiff asserts claims under both Title VII of the Civil Rights Act and the Maine Human Rights Act. The parties agree that state and federal law are the same on the issues presented here.

## FACTUAL BACKGROUND

I discuss the relevant facts, disputed and undisputed, as appropriate to the particular legal issue.

## ANALYSIS

### *The Mitigation Defense*

If a former employee "has made some effort to secure other employment, the burden to prove failure to mitigate normally resides with the defendant-employer." Quint v. A.E. Staley Mfg. Co., 172 F.3d 1, 16 (1st Cir. 1999). The employer concedes that this plaintiff "made at least the requisite minimal effort to obtain new employment after leaving." Def.'s Opp'n at 4 (ECF No. 101). It thus must prove that "(i) though substantially equivalent jobs were available in the relevant geographic area, (ii) the claimant failed to use reasonable diligence to secure suitable employment." Quint, 172 F.3d at 16.

The employer cannot carry its burden. After discovery, it has not offered any evidence regarding Quint's first requirement, the availability of substantially equivalent jobs in the relevant area. As a result, it cannot show that the former employee failed to mitigate her damages,[2] and the plaintiff's motion for partial summary judgment on mitigation is **GRANTED**. (But as appears below, I am granting the employer's motion for summary judgment on the constructive

---

[2] The employer is correct, however, that the duty to mitigate is ongoing. Def.'s Opp'n at 6. If the plaintiff had a viable constructive discharge claim, my ruling today would not relieve her of that obligation going forward, nor preclude the employer from offering evidence at trial that she failed to meet that obligation after November 22, 2017—the day the employer filed its opposition to the former employee's motion and the last opportunity it had to present evidence in support of its position.

2

discharge claim, which means that the former employee has no back pay claim to which the mitigation defense might apply.[3])

***Hostile Work Environment***

To prevail on a hostile work environment claim, an employee must show that:

> (1) she is a member of a protected class; (2) she was subject to harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment; (5) the harassment was both objectively and subjectively offensive; and (6) there exists some basis for employer liability.

Flood v. Bank of America Corp., 780 F.3d 1, 10 (1st Cir. 2015). The parties agree on only the first element.

"There is no 'mathematically precise test' for determining when conduct in the workplace moves beyond the 'merely offensive' and enters the realm of unlawful discrimination." Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 18 (1st Cir. 2002) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993)). Rather, "all the circumstances" must be considered, "including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. at 18-19 (citations omitted); accord Flood, 780 F.3d at 11.

"Pervasiveness and severity are questions of fact. Subject to some policing at the outer bounds, it is for the jury to . . . decide whether the harassment was

---

[3] The parties agreed at oral argument that the mitigation defense applies only to claims for back pay or other lost wages.

of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment."  Flood, 780 F.3d at 11 (quotations and alterations omitted).

The parties hotly contest whether this former employee was sexually harassed at all and if so whether that harassment was objectively offensive and severe or pervasive.  Crediting the plaintiff's version of events where supported by the record as I must at summary judgment, Reed v. MBNA Mktg. Sys., Inc., 333 F.3d 27, 37 (1st Cir. 2003), I conclude that she has raised triable issues of fact on sexual harassment sufficient to go to a jury.  There is nothing to be gained by recounting the specific assertions and denials; suffice it to say that a reasonable jury could find the complained-of conduct was "because of" sex, Burns v. Johnson, 829 F.3d 1, 17-18 (1st Cir. 2016), and was both subjectively and objectively offensive and sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive work environment.

*Retaliation*

The plaintiff's brief opposing the defendant's summary judgment motion asserts, for the first time, a retaliation claim.  Pl.'s Obj. at 25-26 (ECF No. 99). Fact discovery is closed.  The plaintiff did not include this claim in her complaint, did not raise it in her Local Rule 56(h) statement, and did not mention it at the Local Rule 56(h) conference with the Court in preparation for summary judgment practice.  Counsel and the court engaged in a thorough discussion of the issues at that conference.  It is too late in the day to add new claims.  It would thwart the purpose of the Local Rule and the 56(h) conference, which are designed to streamline the summary judgment process.  To the extent this part of the

4

plaintiff's opposition brief can be construed as a motion to amend her complaint pursuant to Fed. R. Civ. P. 15(a)(2), I **DENY** it. See Palmer v. Champion Mortg., 465 F.3d 24, 30-31 (1st Cir. 2006).

*Constructive Discharge*

"In order to establish constructive discharge, [the former employee] must show that conditions were so intolerable that they rendered a seemingly voluntary resignation a termination." Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 50 (1st Cir. 2008); accord Gerald v. Univ. of Puerto Rico, 707 F.3d 7, 25 (1st Cir. 2013) ("A successful constructive discharge claim requires 'working conditions so intolerable that a reasonable person would have felt compelled to resign.'" (quoting Pennsylvania State Police v. Suders, 542 U.S. 129, 147 (2004))). The former employee must prove that conditions were so objectively intolerable that "her only option was to quit." EEOC v. Kohl's Dept. Stores, Inc., 774 F.3d 127, 134 (1st Cir. 2014).

The following facts are undisputed. The former employee worked as a customer service representative at the defendant's call center and was supervised by a "coach." Def.'s Statement of Material Facts (DSMF) ¶¶ 1-3, 7 (ECF No. 95); Pl.'s Opposing Statement of Material Facts (PSMF) ¶¶ 1-3, 7 (ECF No. 100). Toward the end of her medical leave and while still employed, she met with one of her employer's "HR Business Partners" (I will use the shorthand HR) to report the coach's objectionable conduct. DSMF ¶ 113; PSMF ¶ 113. HR told the plaintiff her allegations would be investigated, but that the coach would not be suspended during the investigation. DSMF ¶¶ 133-34, 146; PSMF ¶¶ 133-34, 146, 272; Def.'s Reply Statement of Material Facts (DRSMF) ¶ 272 (ECF No.

5

113). HR tried to dissuade the plaintiff from resigning by encouraging her to take some time to think about the decision and by offering to transfer her to a different team and/or letting her take at least a "day or two" off with pay during the investigation.[4] DSMF ¶¶ 139-40, 142; PSMF ¶¶ 139-40, 142. The employee declined to be moved to another team or to take the paid time off, instead resigning[5] immediately on August 5, 2014. DSMF ¶¶ 141, 145, 148-49; PSMF ¶¶ 141, 145, 148-49, 272; DRSMF ¶ 272. After resigning, she wrote out a report of her coach's harassing conduct and gave it to HR. DSMF ¶¶ 121-23; PSMF ¶¶ 121-23, 277; DRSMF ¶ 277. Before writing her report, the plaintiff signed a confidentiality notice that prohibited her from discussing the investigation with other employees during its pendency. DSMF ¶ 130, PSMF ¶¶ 130, 278-79; DRSMF ¶¶ 278-79.[6]

On these facts, no reasonable jury could find that the plaintiff was compelled to resign on August 5. It is undisputed that she quit that day despite being offered at least two alternatives to resignation. DSMF ¶ 149; PSMF ¶ 149. "[A] reasonable person would simply not feel 'compelled to resign' when her employer offered to discuss other work arrangements with her." Kohl's, 774 F.3d

---

[4] The parties dispute whether HR told the plaintiff how long the investigation would take and whether the paid time off would last the duration of the investigation. DSMF ¶ 143; PSMF ¶¶ 143, 284; DRSMF ¶ 284. The plaintiff testified at her deposition that HR told her she could take "a day or two" to think about her decision. PSMF ¶ 284.

[5] As noted previously, I credit the plaintiff's version of events; there is record evidence from which a jury could conclude that she did not finally decide to resign until the meeting with HR.

[6] The parties dispute whether the plaintiff was required to sign the notice before filing her report, what she was told about possible disciplinary consequences from violating the notice, and what role the notice played in her decision to resign, PSMF ¶¶ 278-79, 282; DRSMF ¶¶ 278-79, 282, but do not dispute that the plaintiff signed the notice.

6

at 134. The plaintiff "actively disregarded two opportunities to resolve her issues." Id.

The plaintiff argues that the option to transfer to a different team does not undermine her constructive discharge claim because the coach caused her to fear for her personal safety and she would have been in the same building at the same time as he.[7] Pl.'s Obj. at 19; PSMF ¶ 283. But the plaintiff still could have taken the paid leave. It is true that HR concluded after the investigation that the coach did not violate the employer's sexual harassment policy, DSMF ¶ 157; PSMF ¶ 157, and thus ultimately conditions may not have changed if the plaintiff had taken the paid leave. The plaintiff's briefing does not argue that I should take this possibility into account, however, and it appears that I cannot. See Torrech-Hernandez, 519 F.3d at 50 ("[A]n employee must show, *at the time of his resignation*, his employer did not allow him the opportunity to make a free choice regarding his employment relationship.") (emphasis added) (citation and quotation omitted). That principle makes sense, because there is no way to know at the time the effect of a path not taken.[8] The choice to quit must be evaluated at the time of resignation. At that point, the plaintiff had an apparently viable

---

[7] The defendant disputes this, arguing that she could have been assigned to a team with a different, non-overlapping schedule. Def.'s Reply at 5 (ECF No. 112); DRSMF ¶ 377. I do not consider this argument, as it appears first in the defendant's Reply Statement of Material Facts, and there was no opportunity for the plaintiff to respond to the new assertion. The defendant contended at oral argument that Local Rule 56(d) permits reply statements to include a new section of additional facts. It does not. Local Rule 56(c), which governs opposing statements of material facts, allows "a separately titled section" of "additional facts." Local Rule 56(c). Local Rule 56(d) contains no such provision. Read in conjunction, it is clear that reply statements must be limited to responding to (*i.e.*, admitting, qualifying or denying) additional facts contained in the opposing statement.

[8] We do not know whether the plaintiff's continued status as an employee might have affected the employer's assessment of the ongoing risk of the coach's conduct or the likelihood of it continuing.

option before her and chose not to exercise it. She has not offered any evidence suggesting that she had any basis for anticipating what the outcome of the investigation (or the resolution of the dispute more generally) would have been had she stayed. Kohl's, 774 F.3d at 134 ("An employee is obliged not to assume the worst, and not to jump to conclusions too quickly.") (citation and alterations omitted). If the defendant directed her to come back too soon, or the situation were intolerable on her return, the time to resign and claim constructive discharge would have been then.

The same is true of the role of the confidentiality requirement. The plaintiff asserts (the defendant disputes the assertion) that she was justifiably afraid of being disciplined if she spoke to anyone about the harassment, PSMF ¶ 279; DRSMF ¶ 279, and that the prospect of being silenced contributed to her decision to resign. PSMF ¶ 282, DRSMF ¶ 282. But that does not justify refusing to take the paid leave. Her constructive discharge claim thus fails as a matter of law, and she cannot recover back pay and associated remedies. Marrero, 304 F.3d at 28.

### *Faragher/Ellerth*

If the plaintiff succeeds at trial on her hostile work environment claim, she could be entitled to compensatory damages (not back pay) for the harms she suffered before resigning. Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 234-37 (1st Cir. 2006). Employer liability for the acts of a supervisor, however, can be negated by the affirmative defense announced in Faragher and Ellerth:

> When no tangible employment action[9] is taken, a defending employer may raise an affirmative defense to liability or damages . . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.

Faragher, 524 U.S. at 807-08; Ellerth, 524 U.S. at 764-65. The employer bears the burden of proof on both elements. Reed, 333 F.3d at 34.

"[T]he judgment call as to reasonableness is itself a jury issue unless no reasonable jury could decide it in the plaintiff's favor." Id. "[A] sexual harassment policy must provide for 'effective grievance mechanisms' and therefore the mere creation of a sexual harassment policy will not shield a company from its responsibility to actively prevent sexual harassment in the workplace." Gentry v. Exp. Packaging Co., 238 F.3d 842, 847 (7th Cir. 2001). As the defendant recognized at oral argument, the question is "whether [the employer], with its sexual harassment policy in place, took reasonable care to prevent sexual harassment." Id.

---

[9] Whether constructive discharge qualifies as a tangible employment action is a fact-specific question that depends on whether some official act underlies the constructive discharge. Suders, 542 U.S. at 148-49 (2004); accord Reed, 333 F.3d at 33-34. Because the defendant here is entitled to summary judgment on the plaintiff's constructive discharge claim, I do not decide whether the Faragher-Ellerth defense would also preclude liability on that basis.

It is undisputed that this employer provided annual training to employees on its sexual harassment policy and had mechanisms for reporting harassment, and that the relevant employees received the training and were aware of the policy and reporting mechanisms. DSMF ¶¶ 12-26, 28-35, 45-48; PSMF ¶¶ 12-26, 28-35, 45-48.[10] As the quotation from Gentry in the preceding paragraph demonstrates, however, disseminating a boilerplate policy is not enough—mere knowledge of a policy cannot "prevent *and* correct" sexual harassment. Faragher, 524 U.S. at 807 (emphasis added). Unlike the defendant, Def.'s Mot. at 23, I do not read Chaloult v. Interstate Brands Corp., 540 F.3d 64, 75 (1st Cir. 2008), as changing that principle.

I conclude that there is a jury issue on whether the defendant exercised reasonable care to prevent and correct promptly any sexually harassing behavior. A few months before the plaintiff made her complaint about the coach, his conduct had already come to HR's attention. It was reported that the coach made two[11] suggestive comments to a different customer service representative (CSR) about her attire that made her uncomfortable. DSMF ¶ 53; PSMF ¶¶ 53, 318-38; DRSMF ¶¶ 318-38. That CSR reported at least one of the comments to a manager, who informed HR. DSMF ¶¶ 53, 55; PSMF ¶¶ 53, 55, 335-36; DRSMF ¶¶ 335-36.[12] HR then met with that CSR about her concerns, including both comments. DSMF ¶¶ 56-59; PSMF ¶¶ 56-59, 337-38; DRSMF ¶¶ 337-38.

---

[10] The plaintiff disputes that employees can "confidentially and anonymously" report sexual harassment using a dedicated company phone line, but not that the line exists. PSMF ¶ 19.
[11] The defendant denies that the coach made the second comment. DRSMF ¶ 332.
[12] The defendant disputes that this CSR formally "reported" the coach's behavior to a manager, describing it instead as "venting." DRSMF ¶ 335. It is undisputed, however, that the manager was made aware of a potential problem and reported it to HR. PSMF ¶ 336; DRSMF ¶ 336.

That CSR told HR that she had stopped wearing the outfit that provoked the comments, that there had been no further comments, and that she did not want HR to take further action. DSMF ¶ 58; PSMF ¶ 58.[13] HR told the CSR to let her know if the comments started again or if the coach did anything else that she felt was inappropriate, but otherwise left it there. DSMF ¶ 59; PSMF ¶ 59. HR did not speak with the coach about his comments. PSMF ¶¶ 339, 342; DRSMF ¶¶ 339, 342. After this conversation, the CSR forwarded to HR a sexually suggestive cartoon that the coach had previously sent to his team. DSMF ¶ 60; PSMF ¶¶ 60, 345; DRSMF ¶ 345. The cartoon transmission violated the employer's sexual harassment policy. PSMF ¶ 346; DRSMF ¶ 346. HR met with the coach regarding the cartoon and "counseled" him about it, arguably[14] a light form of discipline. DSMF ¶ 62; PSMF ¶¶ 62, 348; DRSMF ¶¶ 347-48. The coach's earlier comments about clothing, however, did not trigger the progressive discipline scheme, despite HR's acknowledgment that one of the comments, if made, would be "concerning." PSMF ¶¶ 341, 347; DRSMF ¶¶ 341, 347. The coach was never counseled or questioned about those comments. PSMF ¶ 342; DRSMF ¶ 342. A reasonable jury could conclude that the failure ever to address

---

[13] The plaintiff says that the CSR did not want HR to take further action in part because she was worried the coach would retaliate against her if he learned of the complaint. PSMF ¶ 58. She cites the CSR's declaration, which was an exhibit to her deposition. The CSR's statements in the declaration about this issue are not inconsistent with the relevant deposition testimony cited by the parties.

[14] "Counseling" is apparently akin to a "clarifying discussion," the lowest level in T-Mobile's progressive discipline scheme. PSMF ¶¶ 191, 347; DRSMF ¶¶ 191, 347. Deposition testimony from HR says both that a clarifying discussion often "takes on the appearance of a coaching" and that the coaching of the coach triggered by the CSR's complaints was *not* "part of the disciplinary process." PSMF ¶ 347; DRSMF ¶ 347. There is thus record support for the plaintiff's version of events: that the coach was not disciplined at all based on the CSR's complaints. PSMF ¶ 347. Even if I credited the defendant's version—that the coach was disciplined with a "clarifying discussion" based solely on the cartoon, DRSMF ¶ 347—that would not change the result here.

the clothing incident showed that the employer's implementation of its policy was inadequate.

After the plaintiff here complained to HR about the coach, HR conducted an investigation, interviewing people that HR thought or that the plaintiff said might have knowledge of her claims. DSMF ¶¶ 150-53; PSMF ¶¶ 150-53. In the investigation, two other women reported having issues with the coach's conduct. DSMF ¶ 155; PSMF ¶¶ 155, 288; DRSMF ¶ 288. One reported that she overheard the coach use the word "cunt" while talking to two male CSRs on the workplace floor. PSMF ¶ 289; DRSMF ¶ 289.[15] HR concluded that the coach had an issue with "personal boundary space," but had not violated the company's sexual harassment policy. DSMF ¶¶ 157-58; PSMF ¶¶ 157-58, 297; DRSMF ¶ 297. He was "counseled" about personal space and touching people (that was one of the plaintiff's complaints), but received no other discipline or additional supervision.[16] DSMF ¶ 159; PSMF ¶¶ 159, 299-300; DRSMF ¶¶ 299-300. A reasonable jury could conclude that this treatment of the plaintiff and the preceding incident involving a different CSR demonstrated that the

---

[15] HR made no determination about whether the coach in fact used the "C" word; the coach denied saying it. PSMF ¶ 292; DRSMF ¶¶ 291-92. Fairly read, the HR deposition testimony suggests that HR thought it would not necessarily violate T-Mobile's sexual harassment policy to use the word in a general way, without speaking or referring to any particular woman. PSMF ¶ 290; DRSMF ¶ 290. A jury could consider this in deciding whether the employer satisfied the first element of the Faragher-Ellerth defense.

[16] The plaintiff claims that the coach was "unsupervised," while the defendant claims that he continued to be supervised by his usual supervisor. PSMF ¶ 299, DRSMF ¶ 299. It appears undisputed, however, that the coach did not receive any *additional* supervision during the investigation, a practice T-Mobile had used in the past. In an unrelated incident of sexual harassment, the complained-of senior representative was supervised by additional "backups" during the HR investigation in order to minimize the time he was left unsupervised with his team. PSMF ¶ 199; DRSMF ¶ 199. There is no evidence that such backups were used here.

employer's policy implementation was inadequate to satisfy Faragher-Ellerth's first element.[17]

The defendant therefore is not entitled to summary judgment on its Faragher-Ellerth defense.

**CONCLUSION**

For these reasons, I **GRANT** the plaintiff's motion for partial summary judgment. I also **GRANT** the defendant's motion for summary judgment on the plaintiff's constructive discharge claim and retaliation claim and **DENY** it on the hostile work environment claim and the Faragher-Ellerth affirmative defense.

**SO ORDERED.**

**DATED THIS 12TH DAY OF MARCH, 2018**

/S/ D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[17] I reach this conclusion without endorsing the plaintiff's argument that the employer should be charged with constructive knowledge of the coach's allegedly sexually harassing behavior around other women because the coach's conduct was an "open secret" at the workplace. Pl.'s Obj. at 23; PSMF ¶¶ 125-26, 156. Although the plaintiff asserts that it was "widespread knowledge," PSMF ¶ 156, and occurred "out in the open in front of" other personnel, id., that may not be enough to establish that supervisors and managers were aware. Higgins v. TJX Cos. Inc., 331 F. Supp. 2d 3, 6 (D. Me. 2004).